**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JAMES JOHN RODGERS**                                                         **PETITIONER**

**VS.**                                                  **CIVIL ACTION NO. 1:16cv370-HSO-RHW**

**PELICIA HALL, Commissioner,
Mississippi Department of Corrections
and RONALD KING, Superintendent,
Central Mississippi Correctional Facility**                     **RESPONDENTS**

## REPORT AND RECOMMENDATION

This matter is before the Court on the Petition for Writ of Habeas Corpus filed by James John Rodgers under 28 U.S.C. § 2254. A Harrison County jury found Rodgers guilty of murder in the 2011 shooting death of Clinton Jackson, and the trial court sentenced him to life in prison. The Mississippi Court of Appeals, affirmed the conviction and sentence in *Rodgers v. State*, 166 So.3d 537 (Miss. Ct. App. 2014). Rodgers petitioned the Mississippi Supreme Court for a writ of *certiorari*, which was denied. *Rodgers v. State*, 2013-CT-01718-SCT (Miss. June 25, 2015). Rodgers sought leave from the Mississippi Supreme Court to file a post-conviction motion which the Mississippi Supreme Court denied. *Rodgers v. State*, No. 2016-M-00218 (Miss. June 30, 2016). Rodgers timely filed his Petition for Writ of Habeas Corpus in this Court.

After carefully reviewing the trial court record, the state court pleadings and decisions, and the Petition for Writ of Habeas Corpus, the undersigned is of the opinion that Rodgers is not entitled to habeas relief, for the reasons more fully explained below.

1

Facts and Procedural History

Clinton Jackson was killed on the night of January 24, 2011, at a trailer park in Gulfport, Mississippi. The first police officer arrived on the scene around 9:00 p.m., responding to a 911 call of a shooting. Petitioner's son, Jessie Rodgers,[1] flagged the officer down and told him the shooter, his father, was in the trailer. Jessie directed the officer to the gun that was used, which was lying on the hood of James Rodgers' truck. Jackson's body was found lying next to his SUV, which was parked on or closely adjacent to the lot Rodgers rented for his house trailer.

In addition to Rodgers, three others were present at his trailer: his son Jessie and Jessie's girlfriend Bridget, who were visiting from Georgia, and Megan Taylor who had been living with Rodgers for about seven months. Taylor testified she had known Rodgers for about a year; she had known Jackson over three years and had dated him on and off. Jackson and Rodgers also knew each other and occasionally socialized. On the evening of January 24, Jackson called Taylor asking to speak to Rodgers. Jackson was upset about a photo on his (Jackson's) phone showing Taylor's car at Jackson's house. Taylor testified she heard Rodgers say something like, "Come say it to my face." The call ended, and Rodgers handed the phone back to Taylor. She described Rodgers as "aggravated," and testified Rodgers said Jackson might be bigger than he, but that he could "take [Jackson] in a different way."

About thirty minutes later, Jackson knocked on Rodgers' trailer door, asking to speak to Rodgers. When Taylor told Rodgers that Jackson was there, Rodgers told her not to let him in the house. Jackson asked Taylor to have Rodgers step outside and talk to him, but Taylor told

---

[1] For clarity, the undersigned refers to Petitioner as Rodgers and to his son by his given name Jessie.

2

Jackson he needed to leave, and Jessie went out to get him to do so. Taylor saw no altercation between Jackson and Jessie as they walked out of sight, and she stepped back and shut the door. At that point Rodgers came out of his bedroom with a gun in his hand. Taylor tried to stop him from going out both the front and back doors to the trailer, but Rodgers got out the front door, "ranting and raving," and telling Jackson to get off his property. Taylor shut the door, telling Bridget they should "let the men handle it," and she and Bridget sat down on stools by the door. Less than a minute later, Taylor heard a gunshot and ran outside where she saw Jackson lying on the ground beside his vehicle, with Rodgers and Jessie standing a couple of feet away and Rodgers still holding the gun. Taylor heard one of the men say, "He's toast," and one said, "Call 911." Taylor testified Jackson's truck was running and the door was open. She knelt or sat beside Jackson, picked up his head and screamed at him to hang on. Much later that evening, after spending some time at the police station, Taylor returned to the trailer, gathered her belongings and left. Rodgers called her a few times after that, told her he was sorry he killed Jackson but he "was pissed." Taylor told Rodgers to stop calling, that she hated him for killing her best friend.

Jessie Rodgers testified he was at his father's trailer when there was a brief phone call, during which he heard his father say, "You don't need to come over here." Some thirty minutes later, Clinton Jackson knocked hard on the door, and when Jessie answered the door, Jackson asked where Rodgers was. Jessie stated Jackson was "kind of … pushing on the door." Jessie shut and locked the door, then went to the back of the trailer and told his father he thought the man at the door was the man on the phone call. Rodgers responded that Jackson needed to leave, so Jessie went out and told him to go. Jackson went down the front porch steps, but did not

3

leave the property.  Jessie continued telling him to leave and described Jackson as being angry, "cussing us, calling us names, threatening and saying he's going to settle it, he's not leaving until this was settled."  Jackson kept pacing back and forth, but they slowly moved toward his vehicle, which was parked partly on the roadway, and partly on Rodgers' lawn.  When Jessie started to call the police, Jackson got in his car, closed the door, and started the engine.  Thinking Jackson was leaving, Jessie did not complete the call.  Then Jackson jumped back out of his car and took a swing at Jessie.[2]  Jessie ducked and grabbed Jackson around the throat, and they fell into the driver's seat of Jackson's vehicle, with Jackson hitting Jessie about the head.  Jessie saw a closed pocket knife "in the middle of the vehicle."[3]  When Jackson said he would leave if Jessie would back up, Jessie pushed himself out of the vehicle and stepped toward the rear.

Jessie then saw Jackson again jump out of his car and move toward Rodgers who was about ten to fourteen feet away.  Rodgers shot Jackson.  Jackson "bowed over and turned around and fell" face down.  Rodgers unloaded his gun, laid it on the hood of the truck, and went back inside his trailer.  Jessie called 911.  While he was on the phone with the dispatcher, Jessie rolled Jackson over to check on his condition, which he could tell "wasn't good."  By the time police arrived a few minutes later, Jackson had no pulse.  When Rodgers was arrested that night, he had a can of mace in his pocket.

Forensic pathologist Dr. Paul McGarry performed the autopsy on Jackson.  He testified Jackson was killed by a single gunshot to the center of the chest.  He characterized the shot as a

---

[2] At trial Jessie testified he is 6' to 6'1" tall and around 210 pounds, but he was lighter at the time of the incident; the autopsy indicated Jackson was 6'2" and about 250 pounds.

[3] Police found the closed knife on the recessed center console of Jackson's SUV.

"center mass shot," indicating that it was aimed, rather than random. The bullet went through Jackson's heart, through his pulmonary artery, tore a hole in his coronary artery, and perforated both lungs. According to Dr. McGarry, Jackson would have lost consciousness in seconds. The lack of powder burns on Jackson's body indicated that the gun was fired from over two feet away. After reviewing photographs showing blood spatters in the front seat of Jackson's car, McGarry concluded that Jackson was sitting in his vehicle, facing outward, "in a posture of getting out of the car" when he was shot. McGarry found no injuries to Jackson consistent with a fight.

Rodgers claimed self-defense. At trial, the State offered Instruction S-10, quoted below, which was given to the jury without objection from Rodgers' attorney:

> The Court instructs the Jury that a person may not use more force than reasonably appears necessary to save his life or protect himself from great bodily harm. Where a person repels an assault with a deadly weapon, *he acts at his own peril* and the question of whether he was justified in using the weapon is for determination by the jury.
>
> The law tolerates no justification and accepts no excuse for an assault with a deadly weapon on the plea of self defense except that the assault by the Defendant on the victim was necessary or apparently so to protect the Defendant's own life, or the life of another human being, or his person, or another human being, from great bodily injury and there was imminent danger of such design being accomplished. The danger to life or of great personal injury must be or reasonably appear to be imminent, present at the time the Defendant commits the assault with a deadly weapon. The term "apparent" as used in "apparent danger" means such overt, actual demonstration by conduct and acts of a design to take life or do some great personal injury as would make the killing apparently necessary to self preservation.

(emphasis added) The prosecutor twice referred to the instruction in closing argument, saying first:

5

> Ladies and gentlemen, S-10 read to you by the court tells you that the law tolerates no justification and accepts no excuse for an assault with a deadly weapon on the plea of self-defense except that the assault by the defendant on the victim or necessary or apparently so (*sic*) to protect the defendant's own life.

Later, discussing the deliberate design element of murder, he stated:

> When you point a gun at somebody and you shoot them in the chest, your design is to kill them. That's straightforward. The real question is not in self-defense. And, ladies and gentlemen, that's when you need to look at S-10.

The jury found Rodgers guilty of murder, and the court sentenced him to life in prison.

On direct appeal, Rodgers argued the trial court's giving Instruction S-10 was reversible error because of the "*acts at his own peril*" language. The appellate court acknowledged that the language is an incorrect statement of law, but held that it is not *per se* reversible error; it is instead reviewable under a plain error standard which requires consideration of whether the error adversely affected Rodgers' substantive rights, resulting in a manifest miscarriage of justice. *Rodgers v. State*, 166 So. 3d at 544. Applying this analysis and considering the instructions as a whole as required under Mississippi law, the appellate court found the inclusion of the offending phrase in one of the several self-defense instructions given in Rodgers' case did not constitute reversible error, stating:

> The jury was instructed no less than six times that they must acquit if Rodgers had a reasonable fear of death or serious harm to himself or another. There is no reason to believe that the one reference to Rodgers acting at his peril swept these instructions from the jury's mind.
> \*\*\*
> When considering the numerous and detailed instructions on self-defense given the jury, the jurors could not have been in hopeless conflict over the instructions.

*Id.*, at 546-547. As to the remaining errors claimed on appeal, that the evidence was insufficient to sustain the conviction of murder and that the verdict was against the weight of the evidence,

6

the Court of Appeals held it could not say as a matter of law "that the killing was justified under the [castle] doctrine" because there was evidence that Jackson had not entered Rodgers' home and was not in the process of doing so when Rodgers shot him;"[4] nor could the court say "that the weight of the evidence overwhelmingly supports setting aside the jury's verdict." *Id*. at 548.

Represented by different counsel,[5] Rodgers sought leave from the Mississippi Supreme Court to file a post-conviction motion in the trial court, arguing his trial counsel was ineffective in failing to object to the "at peril" language in the jury instructions. In his proposed petition Rodgers argued ineffective assistance in his trial counsel's failure to raise a castle doctrine defense and failure to obtain an expert witness to challenge Dr. McGarry's testimony that Jackson "was not shot in a defensive manner." The Mississippi Supreme Court denied the post-conviction application, holding the instruction issue barred by *res judicata* because it was addressed on direct appeal, and the other two claims failed to meet the standard for ineffective assistance set out in *Strickland v. Washington*, 466 U.S. 668, 688-692 (1984), *i.e.*, that counsel's performance fell below an objective standard of reasonableness, and that but for counsel's errors the result of the proceeding would have been different.

Proceeding *pro se* before this Court Rodgers presents nine grounds for relief in his habeas petition. These grounds are:

1. The trial court erred in giving Jury Instruction S-10.

2. The trial court erred in suppressing testimony regarding the potential impact of the victim's drug use on his behavior.

---

[4] Rodgers' trial counsel successfully argued for a jury instruction on the castle doctrine. [7-5, pp. 22-29]

[5] Rodgers was represented by different counsel at trial, on direct appeal, and in his application for post-conviction relief.

3. Petitioner was not allowed to attend the grand jury session and the grand jury was improperly instructed on the Castle Doctrine.

4. Insufficient evidence to support a guilty verdict and the trial court erred in denying Petitioner's motion for a directed verdict.

5. The jury was improperly instructed on the application of the Castle Doctrine.

6. The prosecutor made improper comments during closing arguments.

7. The trial court improperly suppressed certain statements made by Petitioner to law enforcement.

8. The Mississippi Supreme Court violated Petitioner's constitutional rights in "arbitrarily" denying his application for permission to proceed with a petition for post-conviction collateral relief.

9. Ineffective assistance of counsel for:

   A. Failure to object to Jury Instruction S-10;

   B. Failure to object to the trial court's suppression of testimony regarding the impact of the victim's drug use on his behavior.

   C. Failure to call an expert witness to challenge the pathologist's testimony regarding the bullet's trajectory within the victim's body;

   D. Failure to object to the prosecutor's improper comments during closing arguments;

   E. Failure to adequately interview the State's witnesses;

   F. Failure to adequately investigate; and

   G. Failure to object to the trial court's suppression of certain statements made by Petitioner to law enforcement.

<u>Law and Analysis</u>

The scope of federal habeas review of claims by persons under state court convictions and sentences is controlled by the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA), 28 U.S.C. § 2241, *et seq.* Respondents first urge that many of the grounds Rodgers' presents for habeas relief are not properly before this Court because they have not been presented to the state court. Under 28 U.S.C. § 2254(b)(1), federal habeas applicants in state custody must exhaust all claims in state court prior to requesting federal collateral relief. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 729-732 (1991); *Nickleson v. Stephens*, 803 F.3d 748, 752 (5th Cir. 2015). To satisfy the exhaustion requirement, a federal habeas petitioner must "give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The petitioner must fairly present his claims to the state's highest court in a procedurally proper manner and afford that court a fair opportunity to pass upon them. That presentation must also alert the state court as to the legal basis for the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *see also Picard v. Connor*, 404 U.S. 270, 276-277 (1971) (holding an equal protection habeas claim defaulted because petitioner's state court claims were based on state law with only a passing reference to the Fourteenth Amendment); *Anderson v. Harless*, 459 U.S. 4, 7 (1982) (dismissing habeas claim on constitutionality of a malice instruction where petitioner had argued the claim only under state law in state court). The Fifth Circuit has held barred a habeas claim that counsel was ineffective during voir dire and closing at trial, where the petitioner had argued in state court only that his counsel was ineffective for failing to marshal and present mitigating evidence at the penalty phase of his trial. *Ries v. Quarterman*, 522 F.3d 517, 523-26 (5th Cir. 2008).

Rodgers assigned only three errors on direct appeal: that the trial court erred in giving Instruction S-10, the evidence was insufficient to support a murder conviction, and that the

9

verdict was against the weight of the evidence. In his application for leave to file a post-conviction motion, he presented three ineffective assistance claims: for failure to object to Instruction S-10, failure to present a meaningful castle doctrine defense, and failure to obtain experts to rebut the testimony of the State's forensic pathologist. Because they were never fairly presented to the state courts, the undersigned is of the opinion that Rodgers' claims in Grounds Two, Three, Five, Six, Seven, and sub-parts (B), (D), (E), (F) and (G) of Ground Nine have not been exhausted, and are procedurally barred from review by this Court and should be dismissed. *See Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995); *O'Sullivan v. Boerckel*, 526 U.S. at 848.

The only habeas claims Rodgers presents which are not procedurally barred are the exhausted claims regarding the "at peril" jury instruction in Ground One and his attorney's failure to object to it under Ground Nine(A), sufficiency of the evidence under Ground Four, Counsel's failure to call an expert to challenge the pathologist's testimony under Ground Nine(C), and his Ground 8 claim of arbitrary denial of his post-conviction application since that claim could not have been raised earlier.

The scope of federal habeas review of claims by persons under state court convictions and sentences is set out in 28 U.S.C. § 2254(d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The reviewing court defers to the state court's factual findings which are presumed to be correct. *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007); *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). "The presumption is especially strong when the state habeas court and the trial court are one in the same." *Clark v. Johnson*, 202 F. 3d 760, 764 (5th Cir. 2000).

Subsection (d)(1) applies to questions of law and mixed questions of fact and law such as are presented in the instant case. *Morris v. Cain*, 186 F.3d 581, 584 (5th Cir. 1999), *reh'g denied* April 28, 2000. Clearly established Federal law is that which exists at the time of the last state court decision on the merits of the claim. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Greene v. Fisher*, 565 U.S. 34, 40 (2011). A state court decision is contrary to federal law if it applies a rule different from the governing law set forth in United States Supreme Court cases or if it reflects a conclusion opposite to one reached by the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 407-412; *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision unreasonably applies federal law if it correctly identifies the governing law but applies it unreasonably to the facts of the case; this must be an objectively unreasonable application of federal law, not merely an erroneous or incorrect application. *Williams*, 529 U.S. at 407-408. *See also Ramdass v. Angelone*, 530 U.S. 156, 157 (2000); *Dale v. Quarterman*, 553

11

F.3d 876, 879 (5th Cir. 2008); *Knox v. Johnson*, 224 F.3d 470, 476 (5th Cir. 2000); *Schriro v. Landrigan*, 550 U.S. at 473–74 (the question under AEDPA "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold..."); *Renico v. Lett*, 559 U.S. 766, 773 (2010).

In Grounds One and Nine(A) Rodgers urges he is entitled to relief due to the trial court's giving Instruction S-10, and his attorney's failure to object to the instruction. The Court of Appeals discussed this issue at length, noting that since trial counsel did not object to the instruction, it could be viewed only under the prism of "plain error." *Rodgers*, 166 So.3d at 544. The Court of Appeals disagreed with Rodgers' contention that the state's clear disapproval of the "at peril" language in previous cases made the inclusion of S-10 in his case plain error. The appellate court noted, "Under the plain-error standard of review, we consider: (1) whether there was an error; (2) that adversely affected a defendant's substantive rights, causing a manifest miscarriage of justice," and held, "The issue thus narrows to this: reading the instructions as a whole, where self-defense is correctly defined in other instructions, does the presence of the 'at peril' phrase in one instruction create the manifest risk that the jury convicted applying an incorrect legal standard?'" *Id.* After examining all the self-defense instructions given in Rodgers' case, including Instruction D-4 on the castle doctrine, the appellate court concluded that the jury had been "instructed no less than six times that they must acquit if Rodgers had a reasonable fear of death or serious harm to himself or another," and summarized the evidence as follows:

> The phrase "he acts at his own peril" in challenged instruction S-10 is immediately followed in the same sentence with "and the question of whether he was justified in using the weapon is for determination by the jury." In this case,

12

> the jury heard evidence that Rodgers challenged the victim to come talk to him face to face. Rodgers could have refrained from going to the back of the house and obtaining a deadly weapon. Rodgers could have heeded the urging of his girlfriend and remained in the safety of his home rather than to go outside and confront the victim after he had armed himself with a pistol. He could have used his phone, or his girlfriend's phone, to call the police. He could have used the mace he had in his pocket to subdue or drive away the victim rather than using his gun. The jury had ample evidence to conclude Rodgers himself was not under imminent deadly attack. Concerning Rodgers's defense of his son, although there was evidence of a scuffle between the victim and the son, neither exhibited significant wounds other than those caused when the victim fell to the ground (and the bullet in the victim's chest). No one testified that they saw the victim attacking anyone with a weapon. Moreover, neither in opening statement nor closing argument did the prosecutor argue the "he acts at his own peril" language in the jury instruction. The jury during deliberation sent no note to the judge requesting an explanation of the "he acts at his own peril" language. All witnesses present at the time of the shooting, including Rodgers, testified before the jury. The case was a well-tried case by competent counsel for both parties, and the jury was fully informed of Rodgers's claim of necessary self-defense.

*Id*., 166 So.3d at 545-546. Thus, even though the "at peril" phrase should not have been included in Instruction S-10, the "numerous and detailed" instructions given to the jury did not result in "hopeless conflict," and the court "detect[ed] no manifest injustice that seriously affects the fairness, integrity, or public reputation of the judicial proceeding." *Id*. at 547.

Rodgers argues Instruction S-10 is contrary to state law. However, "Federal habeas corpus relief does not lie for errors of state law.' *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), *reh'g denied* 497 U.S. 1050; *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Habeas precedent places an "'especially heavy' burden on a defendant who . . . seeks to show constitutional error from a jury instruction that quotes a state statute." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). The defendant must show both ambiguity in the instruction and a reasonable likelihood that the jury applied it in a way that relieved the state of its burden to prove all elements of the crime beyond

13

a reasonable doubt. *Id.*, 555 U.S. at 190-91. Federal habeas is available only where "the instruction by itself so infected the entire trial that the resulting conviction violates due process." *Sarausad*, 555 U.S. at 190-191 (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). It is not enough that there is some "slight *possibility*"' that the jury misapplied the instruction. *Weeks v. Angelone*, 528 U.S. 225, 236 (2000). The state court's opinion on the challenged instruction in this case evidenced a thoughtful and thorough examination, under the plain error doctrine, of the self-defense instructions given at Rodgers' trial. The undersigned finds nothing about the state court's opinion that constitutes an unreasonable application of federal law or an unreasonable determination of the facts. Habeas relief on Ground One is not warranted.

Rodgers' argument that his trial counsel was ineffective for failing to object to the erroneous instruction is likewise unavailing. Even if his counsel's performance were deficient, Rodgers cannot establish that the deficiency affected the outcome of his trial. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' … Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" (citations omitted). *Harrington v. Richter*, 562 U.S. 86, 104 (2011). As the Court stated in *Strickland*, "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S.at 686. The inclusion of a defective instruction in a jury charge is a trial error that may be reviewed under a harmless error analysis. *Garcia v. Quarterman*, 454 F.3d 441, 446 (5th Cir. 2006). As with the plain error doctrine employed by the state court in its review of S-10, "the relevant question is whether the state court's error 'had substantial and injurious effect or influence in determining the jury's

14

verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Like the state appellate court, this Court must view the instructions in their entirety. *Garcia*, 454 F.3d at 449. In so doing, the undersigned reaches the same conclusion that, considering the instructions as a whole, the inclusion of the "at peril" language in one of them did not have a substantial and injurious effect or influence on the jury's verdict. For that reason, under clearly established federal law, the instruction was harmless, and where there is no prejudice from the trial error, there is no prejudice from counsel's failure to object to it. *See Mayabb v. Johnson*, 168 F.3d 863, 869 (5th Cir. 1999); *see also Galvan v. Cockrell*, 293 F.3d 760, 766 (5th Cir. 2002). The undersigned finds Rodgers' habeas Ground Nine (A) provides no sufficient basis to warrant habeas relief.

In Ground Four Rodgers argues the trial evidence does not support the jury verdict. A petitioner is entitled to habeas relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Claims based on *Jackson* are rarely successful in federal habeas cases "because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). At the appeal level, the reviewing court must defer to the jury's finding, unless "'no rational trier of fact could have agreed with the jury.'" *Id*. (quoting *Cavazos v. Smith*, 565 U.S. 1, 4 (2011)). And on federal habeas review, the court may overturn a state court's finding that the evidence was sufficient to support the verdict "only if the state court decision was objectively unreasonable." *Coleman*, 566 U.S. at 651 (quoting *Renico*, 559 U.S. at 773). As previously discussed, the Mississippi Court of Appeals thoroughly examined the record evidence supporting the verdict, concluding that:

15

> The State introduced sufficient evidence supporting each element of the offense. Rodgers argues that the killing was justified under the 'castle' doctrine, which allows a person to use deadly force to repel an entry into his dwelling or its premises. The jury was properly instructed on the castle doctrine and rejected this defense. We cannot say, as a matter of law, that the killing was justified under this doctrine. There was evidence that the victim had not entered Rodgers's home and was not in the process of doing so when Rodgers shot him.

*Rodgers v. State*, 166 So. 3d at 547-48. The state court properly deferred to the jury's finding on this issue, and the undersigned finds that decision was not objectively unreasonable. Ground Four provides no basis for habeas relief.

Rodgers claims in Ground Eight that the Mississippi Supreme Court arbitrarily denied his post-conviction application. He characterizes the decision as a "'post card denial,' 'one line denial', 'no merit' denial, without any explanation [which] only perpetuates the improprieties, resulting in a denial of fundamental fairness." [1-1, p. 99] While the state court order is brief, brevity does not equate to arbitrariness. The order addresses the three claims of ineffectiveness which Rodgers presented. Two of those claims were included as grounds on this habeas petition, and have been discussed above and found insufficient to warrant habeas relief. The state court's decision can be the basis for habeas relief under AEDPA only if its reasoning or its result contradicted federal law that has been clearly established by the United States Supreme Court. *Early v. Packer*, 537 U.S. 3, 7-8 (2003). Thus, the result may be upheld even if the controlling cases are not cited, or even if the state court is unaware of those cases. *Id*. As the Fifth Circuit held in *Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010):

> Upon federal habeas review of a state court's adjudication, we ultimately "review only a state court's 'decision,' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels

16

federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.").

Rodgers presented his three ineffectiveness claims, based on the Supreme Court case of *Strickland v. Washington*, to the Mississippi Supreme Court in his Application for Leave to submit a post-conviction petition. The Mississippi Supreme Court held the claim based on the instruction barred by *res judicata*, and the other two claims failed to meet the *Strickland* standard. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 568 U.S. 289, 302-03 (2013). The undersigned finds no merit in Rodgers claim that the state court decision denying his post-conviction application was arbitrary.

In Ground Nine (C) Rodgers argues his trial counsel was ineffective for failing to present an expert to refute the testimony of the forensic pathologist, stating:

> Petitioner Rodgers trial counsel failed to procure an expert witness on his behalf to rebut the testimony of the state's expert witness, Dr. Paul McGarry; i.e., "trajectory hypothesis." This error alone is substantial enough to deprive Petitioner Rodgers of his constitutional procedural right to have a compulsory process for obtaining witnesses in his favor.
>
> But for Petitioner Rodgers trial counsels unprofessional cumulative serious errors the results of the proceeding would have been different.
>
> Minus an expert on behalf of the Petitioner to properly cross examine the states expert witness lead to the denial of Petitioner Rodgers's confrontation rights as guaranteed by the Sixth Amendment of the United States Constitution.
>
> Petitioners counsels inactions can not possibly have been a trial strategy that falls within the range expected of reasonable professional competent assistance of counsel, undermining the adversarial process, producing an unjust result…

[1-1, pp. 96-97] Rodgers has neither identified a potential expert who would have testified in his favor, nor shown that such an expert could have contested Dr. McGarry's opinion on the trajectory of the bullet that killed Jackson. Habeas claims based on uncalled witnesses "are not favored . . . because allegations of what a witness would have testified are largely speculative." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). When alleging ineffectiveness, a petitioner must show that counsel's performance was sub-standard and that the defective performance prejudiced his opportunity for a fair trial. *Strickland*, 466 U.S. at 687. Absent evidence that an expert could have been obtained who would counter McGarry's testimony, Rodgers does not meet the *Strickland* standard, and habeas relief is not warranted. *See Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir. 1998):

> Earhart has not identified an expert witness available to testify on his behalf or the type of testimony such a witness would have provided beyond that elicited at trial. Furthermore, he has not made any showing with respect to how any expert testimony would affect the outcome of the trial. In short, assuming defense counsel was deficient in failing to request an expert, Earhart has not established that this failure prejudiced his defense or otherwise rendered the outcome of his trial unreliable.

*See also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). The undersigned is of the opinion that Rodgers is not entitled to habeas relief on Ground 9(C).

## **RECOMMENDATION**

The undersigned is mindful that the Court must base habeas review solely on the state court record and give deference to the state court decision unless it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Richter*, 562 U.S. at 102.  Having reviewed Rodgers' claims by this standard, the undersigned finds no merit in Rodgers' Petition and recommends that it be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Within 14 days after service of a copy of this Report and Recommendation a party may serve and file with the Clerk written objections to it, specifically identifying the findings, conclusions, and recommendations to which he objects.  *L.U.Civ.R.* 72(a)(3).  The District Court need not consider frivolous, conclusive, or general objections.  The opposing party must file responses to objections within seven days after service or notify the District Judge that he does not intend to respond.  Absent timely written objections, one may not attack on appeal any proposed factual finding or legal conclusion accepted by the District Court, except on plain error grounds.  *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed this the 5th day of June 2019.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE